IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-02188-LTB

CONNIE L. CASTINE,

   Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

   Defendant.
_____

ORDER
_____

   Plaintiff, Connie Castine, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplemental security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

   Plaintiff seeks judicial review of the Commissioner's decision denying her protectively-filed applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 68, 231] The applications were initially denied on October 28, 2002. [AR 61-65] An Administrative Law Judge ("ALJ") subsequently conducted an evidentiary hearing and issued a written ruling on April 1, 2005, again denying Plaintiff's

applications. [AR 27A-39] On November 30, 2005, the SSA Appeals Council remanded the case to the ALJ for additional proceedings. [AR 241-43]

After a second hearing, the ALJ issued a written ruling on May 17, 2006, denying Plaintiff's applications on the basis that she was not disabled because she is able to perform her past relevant work (Step Four). [AR 8-16B] On August 31, 2006, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 4-6] Plaintiff timely filed her complaint with this court seeking review of the Commissioner's decision.

## II. FACTS

Plaintiff was born on September 29, 1950, and was 55 years old on the date of the ALJ's decision. [AR 78, 231, 257] She has a high school education and vocational training as a computer programmer. [AR 75, 84, 257] Her relevant prior work history is as a software engineer, software support specialist, and a systems analyst. [AR 70, 84, 86-93, 106] Plaintiff alleges that she became disabled on January 29, 2002, after she fell on her hands and knees, due to pain in her back and leg or knee. [AR 11, 31, 69, 258-59]

The medical records reveal that Plaintiff first sought treatment from Steven Waskow, M.D., for her right knee in 2000. [AR 112-118] She ultimately underwent surgery and physical therapy in January 2001 to repair a torn meniscus in her right knee. [AR 111] Plaintiff again saw Dr. Waskow in May 2001 because her right knee would occasionally "give out." Dr. Waskow's recommendation was for exercise or more physical therapy. [AR 110]

The records indicate that the next health care Plaintiff sought was in August 2002 when she was treated at the Memorial Hospital emergency room for low back pain. [AR 124-25] An MRI dated August 12, 2002, showed "[m]ulti-level lumbar disc desiccation without disc herniation or nerve root displacement; [e]ccentric, bulging annulus fibrosis to the left at L2-3 with mild anterior L1-2 and moderate anterior L2-3 spur formation." [AR 143] The MRI showed no evidence of any disc bulge or herniation, and no stenosis. [AR 143-45, 191-92] On August 21, 2002, Plaintiff saw Brien J. Whittington, D.O., for follow-up care. [AR 72, 119-20]. At this single visit, Dr. Whittington diagnosed low back pain with sciatica. [AR 119] Plaintiff again reported to the emergency room on August 27, 2002, complaining of low back pain with some parensthesis in her feel and radiation pain. [AR 121-22] She was released with apparently no follow-up care. [AR 122]

On September 11, 2002, Laurence S. Lopez, M.D., executed a medical source statement in support of Plaintiff's request for disability payments from the State of Colorado. [AR 141-42, 148, 156-57] Dr. Lopez diagnosed Plaintiff with disc desiccation and herniation with sciatica, and opined that she had no work capacity. [AR 139, 141-42]

On November 5, 2002, Plaintiff saw William F. Deverall, M.D., for a one-time examination. [AR 140] Plaintiff complained of back pain and reported that her "right foot goes numb and her left foot is numb on the bottom of the foot" as well as discomfort in her right knee and sleep disturbance. [AR 140] Dr. Deverall noted that Plaintiff seemed to exaggerate her complaints of low back pain, and her almost nonexistent range of motion was, in fair amount, "voluntary refusal to go through a range of motion" in that he did not "think that she [was] fully cooperating." [AR 140] Dr. Deverall further noted that the MRI radiologist report revealed

3

"nothing grossly abnormal . . . and there is no central spinal stenosis or evidence of disc bulge or herniation." [AR 140]

On December 9, 2002, at the request of Plaintiff's counsel, Dr. Lopez completed a "Multiple Impairments Questionnaire." [AR 148-155] Dr. Lopez noted that Plaintiff's lumbar spine was tender over the lumbar spinous process, that there was muscle tenderness and pain with flexion of her spine. [AR 148] Dr. Lopez indicated that Plaintiff had degenerative disc disease with right leg sciatica, and opined that Plaintiff would be limited to 1 hour of sitting and 1 hour of standing during an 8-hour day, and that she could lift and carry up to 5 pounds occasionally. [AR 150-51] Dr. Lopez also limited Plaintiff to no pushing, pulling, kneeling, bending, or stooping and suggested that she would be absent from work more than three times a month. [AR 154]

On December 18, 2003, at the request of the SAA, Plaintiff was examined by Greg Feinsinger, M.D., a consultive phsycian. [AR 158-160] Dr. Feinsinger assessed "chronic low back pain [after a 1/29/02 fall] with persistent lower extremity symptoms, presumably radicular, all of which have become quite disabling." [AR 159] His opinion was based in part on "abnormal MRI 8/12/02 [and] abnormal LS-spine films today." [AR 159] In a "Medical Assessment of Ability to do Work-Related Activities (Physical)" Dr. Feinsinger opined that Plaintiff retained the ability to lift up to 10 pounds occasionally, sit for a total of 4 hours out of an 8-hour day, stand for a total of 1 hour out of an 8-hour day, and reach occasionally. [AR 161-65] At this same time, Plaintiff began regular health care at the Mountain Family Health Center. [AR 166-215] On April 21, 2004, Plaintiff's treating physician there, Theresa DiCroce, M.D., certified to a state housing authority that Plaintiff was disabled due to multiple disc

4

herniations and radiation of pain. [AR 187] Subsequently, on February 8, 2005, Dr. Crystal Roney at Mountain Family Health Center diagnosed Plaintiff with "lumbar DJD with disc desiccation and low back pain." [AR 193] At Plaintiff's request, Dr. Roney completed a Multiple Impairment Questionnaire indicating that Plaintiff was able to lift/carry up to 10 pounds occasionally and that she could stand for 4 hours out of an 8-hour day, and sit for 4 hours out of an 8-hour day. [AR 194 - 201] Dr. Roney limited Plaintiff to no bending and no stooping and indicated that Plaintiff would be capable of tolerating moderate work stress. [AR 199-200]

In a follow-up letter dated approximately June 3, 2005, Dr. Roney indicated Plaintiff had been diagnosed with degenerative joint disease with disc desiccation and low back pain. [AR 193] In that letter, Dr. Roney opined that Plaintiff was limited in her ability to bend, lift, stand, or sit for long periods of time due to pain. However, Dr. Roney also noted that she was not trained in formal disability or functional assessment evaluations, and recommended an evaluation elsewhere if more specific information was needed. [AR 193]

On July 21, 2005, Kristin Ann Main, MA, LPC, completed a report after treating Plaintiff at the Glen Oak Counseling Practice. [AR 216-219] She diagnosed Plaintiff with an adjustment disorder with depressed mood and "back pain from degenerative disks and osteoarthritis." [AR 217] Ms. Main opined that Plaintiff "psychologically" suffered from a chronic progressive medical condition, demonstrated depressed mood, fearfulness and feelings of helplessness which indicated adjustment disorder with depressed mood/chronic. [AR 217] Ms. Main further opined that Plaintiff had a debilitation process in her back that affected her ability to function in a normal work setting. [AR 218]

On August 4, 2005, Thomas St. John, M.D., examined Plaintiff for complaints of low back pain radiating into the lower extremities. [AR 220-22] His physical examination of Plaintiff revealed Plaintiff ambulated with an antalgic gait and a cane, that she was diffusely tender, that she had breakaway weakness, and diminished reflexes. [AR 220-21] Dr. St. John reported that her motor strength testing was initially difficult, due to Plaintiff's lack of effort, but when encouraged, Plaintiff demonstrated 5/5 motor strength in all tested areas. [AR 221] Straight leg raising and hip irritability were negative, and her August 2002 MRI was "unremarkable in regards to neural compression" but indicates "degenerative disk diseccation throughout the lumbar spine with mild disk height loss and grad disc bulging at multiple levels [with] no significant neural compression." [AR 220-21] Dr. St. John's impression was "non-specific back pain with radiation into bilateral lower extremities." [AR 221] In a follow-up visit on September 8, 2005, Dr. St. John reviewed the results of a new MRI dated August 11, 2005. [AR 222] That MRI revealed no herniations or nerve involvement. [AR 222] Dr. St. John's impression was "lumbar spondylosis" and "axial low back pain with radiation into the lower left extremity with right numbness." [AR 222]

On March 1, 2006, Dr. Roney completed a Lumbar Spine Impairment Questionnaire at Plaintiff's request. [AR 223-229] Dr. Roney estimated that Plaintiff could sit, stand or walk for 1 hour at a time, with the ability to change positions every 30-60 minutes. [AR 225-26] She limited Plaintiff to lifting and carrying zero to five pounds frequently and five to ten pounds occasionally, and that Plaintiff was capable of low work stress. [AR 226-27]

6

## III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner

has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

Initially, the ALJ ruled that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. [AR 13] The ALJ also ruled that Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision (Step One). [AR 13]

The ALJ next determined that Plaintiff had a "severe" impairment of a back disorder (Step Two). [AR 13] However, the ALJ further determined that such impairment or combination of impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 14]

As a result, the ALJ went on to find that Plaintiff had the RFC to perform the full range of sedentary work. The ALJ then found that Plaintiff was able to perform her past relevant work as a computer programmer (Step Four). [AR 16A] The ALJ concluded that Plaintiff was not disabled at Step Four of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 16B]

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the

8

function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

On appeal, Plaintiff contends that the ALJ erred when concluding that she retained the RFC to perform a full range of sedentary work and, consequently, there is insufficient evidence to support the conclusion that Plaintiff could perform her past relevant work at Step Four of the sequential evaluation process.

A claimant's RFC ("residual functional capacity") represents the capacity of a claimant to perform work, despite physical and/or mental impairments. RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(b), 416.945(b). The RFC determination must be based on all the relevant evidence, including information about the individual symptoms and any medical source statements. *Id.; see also* Social Security Ruling 96-9P & 96-8p.

The ALJ here determined that Plaintiff has the RFC "to perform the full range of sedentary work." [AR 14] Sedentary work is defined by 20 C.F.R. § 404.1567(a) and § 416.967(a) as follows:

9

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.
> Jobs are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

Social Security Ruling 96-9p further provides that because the full range of sedentary work requires that individuals be able to stand and walk for a total of approximately 2 hours, "[s]itting would generally total about 6 hours of an 8-hour workday."

Plaintiff's argument on appeal is that the ALJ's order lacks a specific determination that she retains the ability to sit about 6 hours of an 8-hour work day and, moreover, that the evidence is insufficient to support such a determination. As a result, she asserts that the ALJ's conclusion that she retains the RFC to do the full range sedentary work constitutes error.

The ALJ's order does not specifically determine or make a finding related to Plaintiff's ability to stand, walk and sit during an 8-hour work day; rather, it concludes that she is able to "to perform the full range of sedentary work." [AR 14] However, in discussing the evidence related to Plaintiff's ability to sit and stand, the ALJ indicates that Plaintiff testified that "[s]he felt she could sit one hour at a time and then she would need to get up or lie down or recline in a chair [and s]he said she could stand about 5 minutes but had to pace back and forth." [AR 18, 266-67] Although Plaintiff's impairment could be expected to produce some of the alleged symptoms, the ALJ concluded that her "statements concerning the intensity, duration and limiting effect of theses symptoms are not entirely credible." [AR 16A] The ALJ noted that Plaintiff used a wheelchair at the hearing, which contradicted her testimony regarding her limitations on sitting and pacing. [AR 16] He also referred to the fact that the record shows

Plaintiff stopped working for reasons unrelated to her alleged disabling impairments, and the record "includes evidence strongly suggesting that [she] has exaggerated symptoms and limitations." [AR 16A]

The ALJ also addressed Plaintiff's limitations in sitting and standing when reviewing the various medical opinions. The ALJ first noted that Dr. Lopez's opinion on September 11, 2002 that Plaintiff had no work capacity because of multilevel disc desiccation and herniation with sciatica, was contradicted by his subsequent opinion on December 9, 2002, that she had degenerative disc disease and that an MRI showed no disc herniation or nerve root displacement. [AR 15] Dr. Lopez also opined that Plaintiff could sit, stand, and walk one hour in an 8-hour workday, but the ALJ found that "his restrictions are not supported by the medical records" and, as such, the ALJ afforded "little weight" to Dr. Lopez's opinion. [AR 15]

The ALJ also discounted the opinion of the consultive physician, Dr. Feinsinger, who opined that Plaintiff "could sit for one hour and walk one hour total in an 8-hour workday" on the basis that Dr. Feinsinger "relied quite heavily on the subjective complaints of symptoms and limitations provided by [Plaintiff] and seemed to uncritically accept them as true" when "there exist good reasons to question the reliability of [Plaintiff's] subjective complaints." [AR 15]

Finally, as to Dr. Roney's functional assessments dated February 8, 2005 and March 1, 2006, the ALJ gave them "little weight" because she indicated that she was not trained in formal disability or functional assessment evaluations and, in fact, recommended an alternative evaluation. The ALJ also found that Dr. Roney could not support her opinion and that she diagnosed an unrelated impairment (depression) that was not within her expertise. [AR 16]

11

In conclusion, the ALJ determined that the medical records and related opinion evidence did not support Plaintiff's claims and testimony regarding her limitations on her ability to sit and stand in a day. Thus, in light of the ALJ's determination that Plaintiff's testimony related to her limitations was not credible, I conclude that the ALJ's RFC determination that Plaintiff can perform a full range of sedentary work – and the sitting and standing requirements within the definition thereof – is grounded in substantial evidence in the record. "As long as substantial evidence supports the ALJ's determination, the . . . decision stands." *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir.1992).

Accordingly, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated: July   22  , 2008 in Denver, Colorado.

                                                        BY THE COURT:

                                                          s/Lewis T. Babcock
                                                        LEWIS T. BABCOCK, JUDGE